COURT OF APPEALS
DECISION
DATED AND FILED

February 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP1520-FT**

Cir. Ct. No.  2024ME8

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE MENTAL COMMITMENT OF C. B. O.:

TREMPEALEAU COUNTY,

    PETITIONER-RESPONDENT,

  V.

C. B. O.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Trempealeau County: THOMAS W. CLARK, Judge. *Affirmed.*

¶1    HRUZ, J.[1]  Carl[2] appeals orders for his involuntary commitment pursuant to WIS. STAT. § 51.20 and for his involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g).  Carl argues that Trempealeau County presented insufficient evidence to prove that he is dangerous under § 51.20(1)(a)2.b. and 2.c.  We conclude that the County presented sufficient evidence to prove Carl's dangerousness under § 51.20(1)(a)2.b.  Accordingly, we affirm.

## BACKGROUND

¶2    Carl was emergently detained on February 24, 2024, because he allegedly threatened to kill everyone at his apartment building and subsequently fled from police officers in a motor vehicle chase while the officers pursued him with sirens and lights activated.  Following a hearing, the circuit court found probable cause to involuntarily commit Carl under WIS. STAT. § 51.20.  The court ordered that Carl be evaluated by two examiners and scheduled a final hearing for March 7, 2024.[3]  Carl was examined by a psychiatrist, Dr. Jeffrey Marcus, and a psychologist, Dr. James Black.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  This is an expedited appeal under WIS. STAT. RULE 809.17 (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential appeal using a pseudonym, rather than his initials.

[3] The final hearing was originally scheduled for March 7, 2024, in order to comply with the fourteen-day deadline set forth in WIS. STAT. § 51.20(7)(c), with the last possible day being March 8, 2024.  At the March 7 hearing, Carl recognized the presiding judge, the Honorable Rian Radtke, from Judge Radtke's previous position as corporation counsel in Trempealeau County.  Carl requested that the presiding judge be substituted, and due to the statutory deadline being the next day, requested that the final hearing be delayed.  *See* WIS. STAT. § 51.20(10)(e). The final hearing was rescheduled to March 12, 2024, within the seven-calendar-day deadline to reschedule under § 51.20(10)(e), with the Honorable Thomas W. Clark presiding.  Carl does not raise any issues on appeal regarding the substitution of Judge Clark or the final hearing delay.

¶3     City of Independence Police Officer Natalie Landrum, Dr. Marcus, and Dr. Black testified at the final hearing. Landrum testified that her department was "recently called to an event involving" Carl. Specifically, Landrum stated that she was dispatched to Carl's apartment because a resident at that apartment complex reported that Carl had threatened its residents, "along the lines of, 'I'm going to kill somebody.'" Landrum stated that she responded to the call, that Carl was not at the apartment complex when she arrived, and that Carl was subsequently located a few miles away driving on a county road.

¶4     Officer Landrum stated that she drove to meet Carl at that location, and when she arrived, there was a deputy pulled up beside Carl's parked vehicle trying to talk to him. Landrum pulled her vehicle in front of Carl's vehicle, but Carl then reversed his vehicle and drove around the deputy. Landrum and the deputy then followed Carl as he drove to another city, primarily via the highway. Landrum testified that spike strips were deployed in an attempt to stop Carl, but Carl drove around them.

¶5     Carl eventually stopped his vehicle in front of an office building. Police officers then tried to remove Carl from his vehicle, but they were unable to do so because the vehicle's doors were locked. While speaking to Carl, one of the deputies observed a baseball bat in the vehicle within Carl's reach. Police officers then placed spike strips around Carl's vehicle and thereafter broke the passenger-side window of his vehicle to unlock the doors. Carl started his vehicle again, but it was subsequently turned off by a deputy who was able to reach inside the vehicle. Officer Landrum stated that at least five officers were touching Carl's vehicle at that time and that they could have been injured if Carl had attempted to drive away. Officers subsequently removed Carl from his vehicle. Landrum

3

described Carl's state at that moment as "agitated," and she noted that Carl did not "make a lot of sense when he would talk."

¶6 Doctor Marcus testified that he examined Carl and that he suffers from schizoaffective disorder, which is a recognized mental illness under WIS. STAT. ch. 51. Marcus further stated that Carl displays psychotic symptoms—including hallucinations, disorganized thinking, and persistent paranoid delusions—as well as affective symptoms—including emotional dysregulation and mood instability—of a schizoaffective disorder. Marcus noted that Carl "lacks insight into the extent of his condition and to the presence of psychotic symptoms" and questions his diagnosis of schizoaffective disorder. Marcus expressed that Carl was dangerous to others under WIS. STAT. § 51.20(1)(a)2.b. and 2.c. due to his "threatening behavior."

¶7 Regarding treatment, Dr. Marcus opined that Carl was not competent to refuse medication or treatment because Carl was incapable of applying an understanding of the advantages and disadvantages of, and alternatives to, his medication. Specifically, Marcus testified that Carl "lacked insight into his condition, what he had, why he needed to take the medication, and specifically what the risks were of him remaining untreated. He did not connect some of the problems which led to his detention to the fact that his condition was untreated."

¶8 In his report, which was entered into evidence Dr. Marcus noted that Carl "has a known history of schizoaffective disorder, with multiple [WIS. STAT. ch.] 51 commitments and numerous past hospitalizations." Marcus also noted that Carl "has an extensive history of treatment non-adherence which has resulted in periods of psychotic decompensation over the years." Regarding Carl's threat at the apartment complex and the subsequent police chase leading up to this current ch. 51 petition, Marcus opined that Carl's "dangerous behavior appeared associated with

unstable psychotic and manic symptomatology. His condition was untreated at the time of his detention. It is expected that his symptoms and behavior will begin to improve with his current treatment."

¶9      Doctor Black testified that he examined Carl, and he also opined that Carl suffers from schizoaffective disorder, as well as an unspecified neurocognitive disorder. Black opined that Carl was dangerous under WIS. STAT. § 51.20(1)(a)2.c. due to Carl "walking around his apartment [building] naked, yelling at other residents," and being in a "slow-speed car chase with the police" where he refused to get out of the vehicle and forced the police to break one of its windows to remove him from his vehicle. Black testified that, during this incident, Carl "was quite out of touch with reality in terms of his ability to understand what was happening to him." Black also opined that Carl was dangerous under § 51.20(1)(a)2.e. due to Carl not having the "insight or willingness" to follow through with his treatment.[4] Black then stated that, "without question," Carl would continue to decompensate if he were not treated.

---

[4] During its closing argument, the County argued that Carl was dangerous under WIS. STAT. § 51.20(1)(a)2.c., 2.d., and 2.e. The County did not argue that Carl was dangerous under § 51.20(1)(a)2.b. Nevertheless, the circuit court found him dangerous under § 51.20(1)(a)2.b., and "on appeal, the respondent is not barred from asserting any valid grounds to affirm the lower court's ruling." *See State v. Kiekhefer*, 212 Wis. 2d 460, 475, 569 N.W.2d 316 (Ct. App. 1997).

The circuit court did not find Carl dangerous under WIS. STAT. § 51.20(1)(a)2.e. in its oral ruling or its written order. The County does not raise any arguments regarding § 51.20(1)(a)2.e. on appeal; thus, we deem this argument abandoned and do not address it further. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

¶10    The circuit court found Carl was mentally ill, a proper subject for treatment, and dangerous under WIS. STAT. § 51.20(1)(a)2.b. and 2.c.[5]    Regarding dangerousness, the court made the following factual findings:

> [Officer] Landrum talked about the chase through residential neighborhoods…. [T]hen most-telling, when the officers were trying to extract [Carl] from the car … that he tried to start the car and drive away with officers touching him in the car when that clearly would be a very dangerous position for the officers as well as himself.

The court then entered orders for Carl's commitment and for his involuntary medication and treatment.  Carl now appeals.

## DISCUSSION

¶11    Carl argues that the County presented insufficient evidence to prove that he is dangerous under WIS. STAT. § 51.20(1)(a)2.b. and 2.c.  A petitioner seeking to have a person committed under WIS. STAT. ch. 51 bears the burden of proving "all required facts by clear and convincing evidence."  WIS. STAT. § 51.20(13)(e).  Whether a petitioner meets this burden presents a mixed question of law and fact.  *Langlade County v. D.J.W.*, 2020 WI 41, ¶24, 391 Wis. 2d 231, 942 N.W.2d 277.  "[W]e will uphold a circuit court's findings of fact unless they are clearly erroneous."  *Id.*  Whether the facts satisfy the statutory standard is a question of law that we review de novo.  *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.

---

[5] In its oral ruling, the circuit court appears to have not explicitly made a finding that Carl was a proper subject for treatment.  However, the court found that Carl was a proper subject for treatment in its written order of commitment.  Carl does not raise any arguments regarding the lack of an oral finding that he is a proper subject for treatment.  Carl also does not challenge that he is mentally ill and a proper subject for treatment.

¶12 Our review also requires us to interpret statutes. "Statutory interpretation and the application of a statute to specific facts are questions of law that we review de novo." *Garcia v. Mazda Motor of Am., Inc.*, 2004 WI 93, ¶7, 273 Wis. 2d 612, 682 N.W.2d 365. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).

¶13 Three elements must be met for a person to be subject to a WIS. STAT. ch. 51 commitment. *D.J.W.*, 391 Wis. 2d 231, ¶29. The subject must be: (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous under one of the five standards set forth in WIS. STAT. § 51.20(1)(a)2.a.-e. *D.J.W.*, 391 Wis. 2d 231, ¶¶29-30. The circuit court found Carl dangerous under § 51.20(1)(a)2.b., which states that a person is dangerous if he or she evidences

> a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm.

The court also found Carl dangerous under § 51.20(1)(a)2.c., which states that a person is dangerous if he or she evidences "such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals."

¶14 Carl argues that the circuit court erred by finding him dangerous under WIS. STAT. § 51.20(1)(a)2.b because the court did not make a finding that his threat to his neighbors was a threat to do harm that would place others in reasonable fear

of violent behavior. He further contends that the "police incident" did not amount to violent behavior and that his response to the police was "understandable." As a corollary to the latter point, Carl argues that law enforcement engaged in an overreaction during its interaction with him on February 24, 2024. We disagree with Carl in all of the foregoing respects.

¶15 First, on our de novo review, we conclude that the report of Carl's threat to his neighbors contributes to a determination that he was dangerous under WIS. STAT. § 51.20(1)(a)2.b. Carl is correct that the circuit court did not make an explicit finding that he threatened to do serious harm or that his threat put people in reasonable fear of violent behavior.[6] However, the court clearly found Officer Landrum's testimony to be credible. *See Jacobson v. American Tool Cos., Inc.*, 222 Wis. 2d 384, 390, 588 N.W.2d 67 (Ct. App. 1998) ("If a circuit court does not expressly make a finding about the credibility of a witness, we assume it made implicit findings on a witness'[s] credibility when analyzing the evidence."). Carl ignores Landrum's testimony stating that the entire reason she began to interact with Carl was due to the report that Carl made a threat to residents in his apartment complex that he was "going to kill somebody." A threat to "kill somebody" satisfies the requirement of a threat to do "serious physical harm" under § 51.20(1)(a)2.b. *See generally R.J. v. Winnebago County*, 146 Wis. 2d 516, 431 N.W.2d 708 (Ct. App 1988). In this case, the fact that a threat of this nature was reported to law enforcement is a proper consideration in evaluating Carl's overall dangerousness. The people who heard this threat clearly feared the threat enough for one of them to call the police, and the police determined that the threat was credible enough to

---

[6] Carl does not argue that the circuit court failed to make sufficient factual findings to satisfy our supreme court's requirements in *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277.

respond to the call. Thus, the record permits an inference that the caller was put into fear of violent behavior from Carl.

¶16 Regardless, Carl's actions during the "police incident" independently satisfy WIS. STAT. § 51.20(1)(a)2.b.'s dangerousness requirement. Carl contends that the police "overreact[ed]" to his fleeing from them, that he did not create this conflict, and that we can only "speculate" as to whether Carl was going to harm the police officers when he turned on his vehicle while the officers were touching it.[7] In so arguing, Carl ignores and dismisses much of the evidence establishing his dangerousness.

¶17 Doctor Marcus testified that Carl lacks insight into the existence and severity of his condition. Marcus also stated that Carl is not competent to refuse medication and that, without medication, his psychosis will worsen and his behavior

---

[7] The County argues that Carl raises, for the first time on appeal, an argument that the police "overreact[ed]" to the situation and created conflict via a "high degree of force," and that Carl therefore "waived" this argument by not raising it in the circuit court. *See **Tatera v. FMC Corp.***, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited.").

First, we note that the County uses the incorrect term when it argues that Carl "waived" his argument by not raising it in the circuit court. Our supreme court clarified in ***State v. Ndina***, 2009 WI 21, 315 Wis. 2d 653, 761 N.W.2d 612, that although Wisconsin courts previously used the terms "forfeiture" and "waiver" interchangeably, those terms "embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" *Id.*, ¶29 (citation omitted). Given that the County argues that Carl failed to timely raise an argument, the proper concept here is forfeiture.

That matter aside, the County is perhaps correct that Carl failed to raise this argument before the circuit court and that this court could conclude that Carl forfeited the argument. However, Carl raises a fair point that the argument is simply part and parcel of his overall sufficiency of the evidence argument. In any event, forfeiture is a rule of administration, and it does not affect our power to address issues. ***Dalka v. American Fam. Mut. Ins. Co.***, 2011 WI App 90, ¶6, 334 Wis. 2d 686, 799 N.W.2d 923. We choose to address Carl's argument on its merits.

will become more threatening and erratic. In support of this opinion, Marcus gave the example of Carl's "risky behavior" when he fled from the police. Likewise, Dr. Black attributed Carl's behavior—specifically, his behavior during his threat made at the apartment complex and the subsequent flight from the police—to Carl's mental illness.

¶18 Moreover, the conflict at issue *was* created by Carl, insofar as his threat to kill his neighbors precipitated the call to police. Carl ignored a deputy's attempts to peacefully talk to him, he reversed his vehicle when Officer Landrum stopped in front of him (driving around the spike strips that were placed to stop him in the process), he fled to another city,[8] he refused to get out of his vehicle when instructed to do so, and he started his vehicle again while surrounded by officers.

¶19 Further, Officer Landrum testified that five police officers were touching Carl's vehicle and could have been injured when Carl started his vehicle. The circuit court also found that Carl starting his vehicle placed the officers in a "very dangerous position." Carl does not directly contend that this factual finding is clearly erroneous; he simply notes that there was no evidence that he tried to, or did, actually move the vehicle after he started it. While no officers were hurt, Carl's act of starting his vehicle, in this context, constituted violent behavior that evidenced a substantial probability of physical harm to others. At the very least, Carl's act constituted a threat of violent behavior that placed the officers in reasonable fear of serious physical harm. *See generally* **Outagamie County v. Michael H.**, 2014 WI

---

[8] At the final hearing, Dr. Black characterized Carl's flight from the police as a "low-speed car chase." We pause to note that, regardless of the speed at which he drove, the incident took place on a Saturday afternoon, and, in the process of fleeing, Carl drove through residential and business areas.

127, ¶¶4, 34-37, 359 Wis. 2d 272, 856 N.W.2d 603 (explaining the meaning of "threat" in the context of WIS. STAT. ch. 51).

¶20    Because we conclude that the County provided sufficient evidence to prove that Carl is dangerous under WIS. STAT. § 51.20(1)(a)2.b. and Carl does not contest the other elements of his commitment, we affirm the circuit court's order for Carl's involuntary commitment.[9]  Given that Carl does not raise any independent arguments regarding the order for his involuntary medication and treatment, we affirm that order as well.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[9] Carl additionally argues that he is not dangerous under WIS. STAT. § 51.20(1)(a)2.c. Because we conclude that the County sufficiently proved that Carl is dangerous under § 51.20(1)(a)2.b., we need not address the issue of whether Carl is dangerous under § 51.20(1)(a)2.c. *See* ***Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (stating that we need not address all issues raised by the parties if the resolution of one of the issues is dispositive).